[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Since late in 1982, the defendants have operated a beauty salon in the former Pegnataro's Shopping Center on Grand Avenue in New Haven. The defendants' first lease was with Pegnataro's Super Food Stores, Inc. for a five year term beginning November 1, 1982. In December, 1986, the plaintiff Irving Morris purchased the shopping center and negotiated a new lease with the defendants. This second lease began on April 1, 1987, and expired on October 31, 1987, but provided the defendants with the option to renew for two additional five year terms. They exercised the first five-year option and are still in possession.
The plaintiff brings this suit to recover judgment for amounts allegedly due from the defendants under the provisions of both the first and second leases. The amounts sought are for the defendants' share of real estate taxes and common area expenses and a bill for repair of the heating system. The defendants have not disputed the plaintiff's right to enforce the first lease although he was not a party to it. They have, however, pleaded CT Page 8763 several special defenses and have filed a claim of setoff.
The plaintiff apparently decided after trial to abandon a portion of his claim. The amounts claimed and claims made in the plaintiff's post-trial brief do not conform to the allegations of the complaint. The court will consider all unbriefed claims as abandoned.
The plaintiff's post-trial brief claims that the defendants owe a total of $1,771.01 in unpaid common area maintenance expenses ("CAM charges") under the second lease for 1987, 1988 and from 1989 through May, 1992. (The plaintiff's complaint makes allegations of common area charges dating back to 1982, but this was not briefed and is deemed abandoned.) Both the first lease and the second lease require the defendants to pay a pro rata share of the common area repairs and maintenance for the entire shopping center. The plaintiff introduced records to substantiate that $1,771.01 is due and owing. The plaintiff was the owner of the shopping center during this entire period of time. The defendants dispute their liability for the CAM charges, claiming that their business was disrupted from 1985 to 1990 by renovations which were undertaken at the shopping center and that the loss of security lighting for their premises should relieve them from liability for any common area lighting expenses. There is no merit to either defense.
The plaintiff did undertake a renovation of the shopping center in connection with his acquisition of the property. The renovation period was lengthy and the defendants' beauty salon was relocated during the renovation, causing the defendants inconvenience and disruption of their business. However, this claim was settled between the parties in March, 1988, when the plaintiff paid the defendants over $9,000.00 to compensate the defendants for relocation expenses and lost profits. By March, 1988 the defendants were in their new location and the maintenance problems from the construction were ended. The defendants' second defense, that they are not liable because of the lack of security lighting at their new location is belied by their payment history which shows that at least since the beginning of 1989, they have made payments on the CAM charge billings, frequently in the exact amount of the bill. They paid faithfully in 1989 and began to fall behind in 1990 and continuing to the present. The defendants introduced no letters or other evidence demonstrating any contemporaneous complaint about the CAM charges. The defendants are liable for $1,771.01 CT Page 8764 in CAM charges.
The plaintiff also sues for a repair bill of $448.50 for the heating system for the defendants' premises. Each store or unit at the shopping center had a separate heating unit located on the roof. In late January 1987, while the shopping center was being renovated, the defendants complained of no heat. The plaintiff called a service company and later paid the repair bill, which it now seeks to recover from the defendants.
The defendants contend that the need for the repair resulted from the renovation work being done by the plaintiff's contractor. Mr. Kookoolis testified that the electrician admitted that the contractors were working on the wrong furnace, thereby depriving the defendants of heat and causing the need for the repair. The plaintiff did not claim the defendants were responsible for the bill until quite a while after the work was done. None of this evidence was rebutted by the plaintiff.
The plaintiff makes this claim under the first lease, which was drafted by the landlord's representative, Joseph Pegnataro. Paragraph 9.1 of the lease reads:
 During the term of this lease or any extension hereof, the landlord will repair, at its own cost and expense, the exterior structural portion of the demised premises, including but not limited to the roof, walls and foundation. Tenant will maintain and repair, at its own cost and expense, the demised premises including all plate and window glass, repairs made necessary to the air conditioning, electrical, gas, plumbing and heating systems, doors, door closers, windows, toilets and sinks.
The "demised premises" under the lease is defined as the store containing approximately 825 square feet.
If the language of a lease is ambiguous, the construction CT Page 8765 which favors the lessee should be adopted. Perruccio v. Allen,156 Conn. 282, 285 (1968). Although the lease imposes an obligation on the tenant to repair the heating system, the obligation arises in the context of the overall responsibility to repair "the demised premises," which is the store. The heating unit at issue here was located on the roof, not within the store. Under this provision, it is the landlord's responsibility to repair "the exterior structural portion of the demised premises." (Emphasis added.) Resolving the ambiguity against the plaintiff, the court finds that the defendants are not responsible for the heating repair bill because it forms part of the exterior structural portion of the demised premises. This result is particularly appropriate here, where the need for the repair arose from work done and errors made by the landlord's contractor.
The plaintiff's largest claim is for unpaid real estate taxes allegedly due under both the first and second lessee. The plaintiff seeks judgment for real estate taxes from 1982 through 1989. After credit for payments made, the amount sought is $3,394.46. The defendants have numerous defenses to this claim, including the statute of limitations and claims with respect to the proper interpretation of the lease.
Paragraph 17 of the first lease reads:
17. TAX INCREASE
 17.1 Tenant is obligated to pay his proportionate share per square foot of floor space as the Lessee's leased area bears to the entire floor area of the entire building area, including all store locations thereon. This amounts to .030% of total tax.
The index of this lease also recites the title of paragraph 17 as "Tax Increase." The plaintiff seeks judgment for the defendants' share of the entire tax bill for the shopping center, not merely for a percentage of the increase in real estate taxes. The defendants contend that the intention was that the defendants be liable only for an increase in real estate taxes, not for the entire tax bill. CT Page 8766
The defendant Stanley Kookoolis testified that his understanding after reviewing the lease was that if the real estate taxes increased, his rent would increase to compensate the landlord for the additional expense. He testified that he did not receive a bill to pay real estate taxes until 1984 or 1985. At that time, he was asked to pay $95.00 per month because "the taxes went up," he was told. Because his rent was low and his relationship with the landlord was good, he made the monthly tax payments.
Neither party called Mr. Pegnataro, the drafter of the lease, as a witness. The plaintiff asked that the court draw an adverse inference from the defendants' failure to call Mr. Pegnataro as a witness. Secondino v. New Haven Gas Co.,147 Conn. 672 (1960). However, the plaintiff never established that Mr. Pegnataro was actually available to be called as a witness during the trial. Moreover, it is not clear that he is a witness whom the defendants would be expected to produce. It is the plaintiff's claim which contravenes the wording of the lease. The defendants' contention is more consistent with the wording. The paragraph is entitled "Tax Increase." This title is not an oversight because the index to the lease also shows the title as "Tax Increase." The wording of the paragraph is ambiguous because the key and operative words are missing. The paragraph reads "Tenant is obligated to pay his proportionate share . . ." but the paragraph does not identify at all what this is a share of. It does not say "share of the total annual tax bill for the shopping center," the construction urged by the plaintiff. It simply says "share" and the title of the paragraph is "Tax Increase." (Although the plaintiff argues that mathematical computations show that $95.24 per month equals 3% of the entire tax bill, not just the increase, these computations do not overcome the credible testimony of the defendants who were told that the amount represented an increase and who questioned it no further at that time.) The proper construction of the paragraph appears to be that defendants were obligated to pay a proportionate share of real estate tax increases. Moreover, any ambiguity must be resolved against the lessor and in favor of the lessee. Perruccio v. Allen, supra. The plaintiff cannot prevail on his claim for real estate taxes from 1982 until the second lease began on April 1, 1987.
The second lease does provide for payment by the defendants of a pro rata share of the annual real estate taxes for the CT Page 8767 shopping center. The defendants' share beginning April 1, 1987 was 2.8%. However, the evidence as submitted by the plaintiff does not allow the court to calculate the amount which would be due under the second lease only. First, the plaintiff's calculations are based on the "tax year," not the lease year, which began April 1, 1987. Therefore, the court cannot properly calculate the amount of taxes due from April 1, 1987 through 1989. Secondly, the court cannot properly credit the defendants for payments which they made because the payments were not presented on a monthly basis, but rather as a single total of payments from 1984 through 1987. The burden of proving damages is on the party claiming them. Expressway Associates II v. Friendly Ice Cream Corporation of Connecticut, 218 Conn. 474, 476
(1991). (Citations omitted.) The plaintiff has failed to prove the balance of real estate taxes due and owing from the defendants from April 1, 1987.
In addition to their special defenses, the defendants filed a claim of setoff seeking damages from the plaintiff for loss of business during the renovation period and for an alleged overpayment of real estate taxes under the first lease. As the court has already found, the defendants' claims for losses suffered during the shopping center renovation were previously settled with the plaintiff. No further damages are awarded. With respect to the tax claim, the defendants allege that they overpaid their taxes from 1982 to 1987 by $4,527.44. They claim to have paid a share of the actual tax bill rather than a share of the increase in taxes. The defendants failed to sustain their burden of proof on this claim, however. They failed to prove how much they paid to the landlord in taxes, how much the payment for tax increases only would have been and the amount of the overpayment. A party who claims damages must prove them. Expressway Associates II v. Friendly Ice Cream Corporation of Connecticut, supra.
Judgment is entered for the plaintiff on the complaint for $1,771.01 damages plus costs. Judgment is entered for the plaintiff on the setoff.
VERTEFEUILLE, J. CT Page 8768